UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY BOBULINSKI,
  c/o Binnall Law Group,
  717 King Street, Suite 200,
  Alexandria, Virginia 22314,

     *Plaintiff,*

v.

JAMIN RASKIN, in his individual
capacity,
  Serve: 2242 Rayburn House
        Office Building,
        Washington, D.C. 20515,

     *Defendant.*

Case No.:  24-1168

<u>DEMAND FOR A JURY
TRIAL</u>

<u>**COMPLAINT**</u>

1.     Defendant, Jamin ("Jamie") Raskin, has repeatedly lied about Plaintiff, Anthony Bobulinski, implying, and directly stating, that Mr. Bobulinski has lied to Congress and is a Trump campaign plant and pawn, who has collaborated with the Trump campaign, engaged in criminal acts and is not a reliable witness. Defendant lied solely to serve his political agenda by deliberately besmirching the character of Mr. Bobulinski and to protect Joseph Biden. Defendant's assertions are unequivocally false and defamatory. Mr. Bobulinski demanded a complete retraction and deletion of Defendant's posts made on X (formerly Twitter) on April 10, 2024, which Defendant wholly ignored. Accordingly, Mr. Bobulinski seeks to hold Defendant accountable for his malicious and knowing lies.

<u>PARTIES AND JURISDICTION</u>

2.      Plaintiff Anthony Bobulinski is an individual who is not a resident or citizen of the State of Maryland.

3.      Defendant Jamin ("Jamie") Raskin is an individual who is a resident and citizen of the State of Maryland.

4.      This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.

<u>FACTUAL BACKGROUND</u>

*Background of Mr. Bobulinski*

5.      Mr. Bobulinski is a decorated Navy veteran and successful businessman.

6.      For over six years, Mr. Bobulinski was an officer in the United States Navy's elite Naval Nuclear Power Training Command ("NNPTC") as a decorated Master Training Specialist Instructor. He later served as the Command's Chief Technology Officer where he held a Q security clearance from the Department of Energy and from the National Security Agency. When he left NNPTC, Mr. Bobulinski was the top-ranked Direct Input Officer ("DIO") in the entire Command, as is documented in his final Navy Fitness Report ("FITREP").

7.    Mr. Bobulinski's awards and decorations include the Navy/Marine Corps Commendation Medal, the Navy/Marine Corps Achievement Medal, and the National Defense Service Medal.



8.    After his military service, Mr. Bobulinski became involved in business ventures and eventually met Joseph Biden in May 2017. Hunter Biden subsequently engaged Mr. Bobulinski as his business partner to serve as the CEO of SinoHawk Holdings, a company designed to find investments in the United States. Ultimately, a partnership was formed between the Chinese Communist Party/Chairman Ye through their surrogate, China Energy Company Limited ("CEFC"), a CCP-linked Chinese energy conglomerate, and the Biden Family.

9.    Leaked emails eventually raised questions about whether Hunter Biden was profiting off his father's name when he was Vice President of the United States.

10.    The emails showed that Joseph Biden was aware of Hunter's business dealings with foreign nations and even personally benefited from them. They contradicted Joseph Biden's several prior assertions that he had no awareness of, or involvement with, his son's business dealings.

11.    An email dated May 13, 2017, discussed remuneration packages regarding a business deal with a now-bankrupt Chinese company proposing an equity split of "20" for "H" and "10 held by H for the big guy?"

12.    The reference to "the big guy" was used by James Gilliar to refer to Joseph Biden in emails to maintain confidentiality. Hunter Biden referred to his father as "my chairman."

13.    Mr. Bobulinski, who considers himself to be a political moderate and previously donated to members of the Democratic Party, decided to put principles above political party. He confirmed the veracity of the emails to the United States Senate and that Joseph Biden was aware of, and involved with, his son's business dealings with foreign nations, and that the Biden family, including Joseph Biden, accepted money from foreign nations.

14.    Indeed, Mr. Bobulinski came forward because of the lies Joseph Biden was telling, and continues to tell today, about his involvement with, and financial benefit from, his son's business dealings.

15.    Mr. Bobulinski confirmed that he saw, firsthand, that Hunter Biden would frequently go to his father for his approval or advice for various business deals.

16.    Additionally, during the course of their business relationship, Mr. Bobulinski grew concerned that Hunter Biden was using the Chinese company as his "personal piggy bank," and Mr. Bobulinski needed to take certain steps at the board level to minimize that risk.

17.     On March 20, 2024, Mr. Bobulinski was sworn in to testify before the United States House of Representatives Committee on Oversight and Accountability as to the conduct he witnessed by Joseph Biden, Hunter Biden, and Biden Family business associates. A photograph of that moment is depicted below.



*Defendant's History*

18.     Defendant is a Democratic congressman in the United States House of Representatives from Maryland's 8th congressional district.

19.     Defendant was elected to Congress in 2016, and one of his first actions was to publicly denounce the election results of the 2016 presidential election, objecting to its certification. Defendant publicly questioned the legitimacy of the election results, spreading baseless conspiracy theories.

20.     Defendant is also a lawyer, having graduated from law school in 1987, and was a professor of law for over twenty-five years.

21.     Defendant served as the lead manager for the Senate impeachment trial of President Trump in 2021, which resulted in an acquittal.

22.     Defendant serves on the United States House of Representatives Committee on Oversight and Accountability. Mr. Bobulinski had been interviewed privately by the Committee on February 13, 2024, prior to publicly testifying before the Committee on March 20, 2024. Mr. Bobulinski agreed to do so, in part, to accommodate Mr. Hunter Biden's prior demands to testify before the Committee publicly as well as to answer any and all questions about the truth of the corruption within the Biden Family. The Committee then scheduled a public hearing. Notwithstanding, Hunter Biden failed to appear. His empty chair is shown in the above photograph.

<em>Defendant's Lies</em>

23.     On Sunday, March 31, 2024, within days of Mr. Bobulinski's most recent appearance before the United States House of Representatives Committee on Oversight and Accountability (the "Committee"), Defendant appeared for an interview with MSNBC about the Committee hearing and stated that "[t]wenty witnesses who have come in, each one is supposed to be the star witness, the breakthrough witness . . . . and they always turn out to be a Chinese spy, a Russian spy, and none of them has laid a glove on Joe Biden because he hasn't done anything wrong . . . . The only crimes we've identified are by their own witnesses." (the "MSNBC Interview").

24.     On April 1, 2024, Defendant reposted the MSNBC Interview, republishing his false statements to an entirely new audience.

25.    In the MSNBC Interview, Defendant accused Mr. Bobulinski of being a Chinese or Russian spy and that Mr. Bobulinski has committed crimes, falsely impugning his credibility.

26.    On February 14, 2024, Defendant reposted a statement on X, which House Oversight Democrats originally posted, in which he called Mr. Bobulinski "Donald Trump's political pawn" before launching into unsubstantiated accusations of lying by Mr. Bobulinski:

> Unable to support his claims against President Biden with any evidence, Mr. Bobulinski accused multiple FBI agents of lying in their Form FD-302 report, accused the Wall Street Journal of lying in their reporting which dismissed Mr. Bobulinski's claims, accused Cassidy Hutchinson of lying, and accused his former business partners as well as nine of Republicans' own witnesses of lying because they have affirmed that Joe Biden was not involved in his son's business ventures.

27.    Then, on March 6, 2024, Defendant issued a statement that House Oversight Democrats posted on X, and Defendant reposted, in which he called Mr. Bobulinski "a bitterly frustrated would-be business partner who collaborated with the Trump campaign."

28.    Defendant did so to imply that Mr. Bobulinski lied to Congress to curry favor with President Trump and is a Trump campaign plant.

29.    Each of the statements is unequivocally false.

30.    Defendant has presented no evidence to support any of the claims in the posts.

31.    It is a matter of fact that since 2020, when Mr. Bobulinski first started speaking publicly against the Biden Family's corruption, he has spent over $500,000

of his own money on legal fees, including those incurred as part of his voluntary appearances before the Committee. Neither President Trump, nor any Trump affiliated entities, have ever paid for Mr. Bobulinski's legal fees. Rather, he paid for the fees because of his strong sense of civic duty.

32.    Further, Mr. Bobulinski is not affiliated with the Trump campaign in any way. He has never lied to Congress, or anyone else, from the inception of when he first started speaking publicly in 2020 about Biden Family improprieties with the Chinese Communist Party and affiliated organizations. Mr. Bobulinski's testimony, despite Defendant's delusional assertions, does not make him a Russian or Chinese spy. Rather, Mr. Bobulinski is a patriotic American.  He is neither a Republican, nor a Trump campaign plant, and is most definitely not working with a foreign nation to spread disinformation and lie to the American people.

33.    Defendant deliberately and maliciously made these statements, outside the scope of his employment, in an attempt to discredit Mr. Bobulinski's testimony and to besmirch Mr. Bobulinski's character.  It was a mistake for Defendant to believe he was cloaked with immunity for his defamatory statements.

34.    Defendant reposted and made these statements impromptu on X, outside of Congress, and used none of Congress' resources. He did so not to inform the public with facts, but rather, for the unforeseeable act to attack Mr. Bobulinski with lies to try and rehabilitate the reputation and public perception of Joseph Biden in the wake of evidence of corruption presented against him and the Biden Family. The goal of Defendant's conduct was solely to achieve his personal vendetta against

Mr. Bobulinski for speaking out against the Biden Family. Defendant's MSNBC Interview, and his posted and reposted statements clearly fell outside the bounds of his congressional duties.

35.     By letter dated April 10, 2024, attached as Exhibit A, counsel for Mr. Bobulinski demanded that Defendant retract and delete his defamatory posts.

36.     Defendant neither responded to, nor complied with, Mr. Bobulinski's demand.

37.     Defendant was aware at the time he made these false statements that they would inflame a segment of the country against Mr. Bobulinski and would falsely cause persons to disbelieve Mr. Bobulinski's sworn testimony.

38.     As a member of the Committee on Oversight and Accountability, Defendant was acutely aware that Mr. Bobulinski has not accepted money from President Trump, or any persons or entities affiliated with President Trump, to pay his legal bills.  Defendant was further aware Plaintiff is trustworthy, has not told any lies, is not a Trump campaign pawn or plant, and is certainly not a Russian or Chinese spy.  Notwithstanding, Defendant has been working in tag-team fashion with fellow Oversight Committee member, Rep. Dan Goldman, in a social media blitz of defamatory posts deliberately and maliciously besmirching the character of Mr. Bobulinski.

39.     Defendant made these lies against Mr. Bobulinski to defame and discredit his character and punish anyone who dared speak up against the Biden

Family for its many improprieties with the Chinese Communist Party and affiliated organizations.

## CAUSES OF ACTION
### COUNT I
### (Defamation and Defamation *Per Se*)

40.     Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

41.     Defendant has repeatedly defamed Mr. Bobulinski in the media and on X, outside the scope of his employment, by claiming that Mr. Bobulinski is a Russian or Chinese spy, who is untrustworthy, has committed crimes, and collaborated with the Trump campaign to testify against the Bidens.

42.     Defendant's assertions are categorically false.

43.     Defendant published the defamatory statements on X, knowing that they were false or with reckless disregard for the truth. Given Defendant's employment, and position with the Democratic party, he knew Mr. Bobulinski is not a Chinese or Russian spy, is trustworthy, has not committed any crimes, and is not collaborating with the Trump campaign. Defendant did not present any evidence of the claims against Plaintiff and deliberately acted with reckless disregard for the truth.

44.     The defamatory statements constitute defamation *per se* because he directly accused Mr. Bobulinski of committing his own crimes and accused him of committing treason by being a Russian or Chinese spy. Further, by claiming that Mr. Bobulinski is collaborating with the Trump campaign, Defendant sought to destroy

Mr. Bobulinski's credibility, and it subjected him to hatred, distrust, ridicule, contempt, and/or disgrace by a certain segment of America. The statement inherently causes people to view Mr. Bobulinski as untrustworthy by stating as fact that his testimony is bought and paid for without the assistance of any extrinsic evidence.

45.     The defamatory statements have directly and proximately caused Mr. Bobulinski to suffer significant damages, including damage to his, and his family's reputation, humiliation, embarrassment, and mental anguish, as well as to his business ventures, and profession. These damages were foreseeable, are long-lasting, and ongoing, and will be suffered in the future.

46.     Defendant published the defamatory statements knowingly, intentionally, willfully, wantonly, and maliciously with intent to harm Mr. Bobulinski, or in blatant disregard for the substantial likelihood of causing him harm and were part of a well-established malicious pattern by Defendant, thereby entitling Plaintiff to an award of punitive damages.

47.     As a direct and proximate result of the misconduct of Defendant, Mr. Bobulinski is entitled to compensatory, special, and punitive damages, in the sum of $10,000,000.00, or such greater amount as is determined by the jury.

## COUNT II
### (Defamation by Implication)

48.     Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

49.     In his February 14, 2024, statement, Defendant said that Mr. Bobulinski has been unable to support his claims and accused him of lying, Defendant's March 6, 2024, post described Mr. Bobulinski as a "dubious" witness.

50.     In doing so, Defendant intended to convey and imply the defamatory interpretation that it is Mr. Bobulinski was untrustworthy, who lied to Congress.

51.     Defendant's statements left a reasonable reader with the impression that it is really Mr. Bobulinski, who was bought and paid for by the Trump campaign, and therefore, who was lying about the Biden family's business dealings.

52.     Defendant intentionally created this inference to salvage his political party, and Joseph Biden, to the detriment of Mr. Bobulinski in his patriotic pursuit to expose the truth of the Biden Family corruption.

53.     The inferences made are defamatory as they lead to hatred, distrust, ridicule, contempt, and/or disgrace for Mr. Bobulinski, and leaves the interpretation that Mr. Bobulinski was untrustworthy and lied to Congress. Indeed, it caused not only a large segment of the nation that despises all things Trump regardless of reality, but also rational and reasonable viewers, not to trust or find credibility with Mr. Bobulinski.

54.     Defendant made the statements with malice.  He intended and endorsed the inference because he wanted to continue to discredit Mr. Bobulinski to serve Defendant's personal political agenda and that of the Bidens.

55.     As a direct and proximate result of the misconduct of Defendant, Mr. Bobulinski is entitled to compensatory, special, and punitive damages, in the sum of $10,000,000.00 or such greater amount as is determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anthony Bobulinski respectfully requests this Court to enter a judgment in his favor and grant relief against Defendant as follows:

a.   An award of compensatory, special, and punitive damages of twenty million dollars ($20,000,000.00);

b.   An award of Plaintiff's costs associated with this action; and

c.   Such other and further relief as the Court deems just and appropriate to protect Plaintiff's rights and interests.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


Dated: April 22, 2024                    ANTHONY BOBULINSKI
                                         *By Counsel*


                                         Respectfully submitted,

                                         */s/ Brian R. Della Rocca*
                                         Brian R. Della Rocca
                                         Bar No. 21781
                                         DELLA ROCCA LAW
                                         9801 Washingtonian Blvd., Suite 710
                                         Gaithersburg, Maryland 20878
                                         Ph: (240) 455-5090
                                         Fax: (301) 740-2297
                                         brian@dellaroccalaw.com

Jason C. Greaves (*pro hac vice*
application forthcoming)
Jared J. Roberts (*pro hac vice*
application forthcoming)
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Ph: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

*Attorneys for Plaintiff*